Good morning, Your Honors, and may it please the Court. My name is Dennis Benjamin for Rudy Trevino. I'd like to reserve three minutes for rebuttal, if I may. I'm here today to ask the Court to grant the writ and remand for further proceedings in the State Court. Since the reply brief in this case was filed, the U.S. Supreme Court decided Frey v. Fleisher. That's the Brex standard, applies to the harmless error question if this Court decides to do its own harmless error analysis. I bring that to the Court's attention. I'm getting ahead of myself, however, because I'd like to address the existence of the constitutional error, of course, before we get to the Brex standard. Now, in this case, Mr. Trevino's due process rights were violated because of the suggestive identification procedure, both at the lineup and at the show-up, and because the indicia of reliability did not weigh the suggestive pretrial identification procedures. Now, the Idaho Supreme Court's resolution of this issue was both an unreasonable application of control from the Supreme Court president, as well as an unreasonable determination of the facts as presented to the State court. If I could talk about the determination of facts issue first. Now, I'm going to ask you about the videotape. The State trial court rejected Mr. Trevino's argument after reviewing the videotape and made certain findings about the tapping and, you know, what exactly occurred there. And you've reviewed the videotape, I'm assuming. I have. Is there, you know, is there anything in the videotape that would, I mean, that you can point us to that would show that the court's absolutely wrong on that? I think I can, Your Honor. And this is a perplexing question to me, because when I see the videotape, I clearly see the detective. Mr. Trevino is in the middle top row, and the detective is clearly tapping right there after the witness, Mr. Curtis, picks number 1. He is clearly tapping on number what I thought was number 2, but is actually number 3, the middle of the top. Well, if he tapped on number 2, that wouldn't be a very good hint, would it? No. He wasn't tapping number 2. His arm was actually probably covering number 2. I know that the State district court said that he did not find the State district court judge said he did not find tapping. The resolution of the issue by the Idaho Supreme Court is a little bit more problematic. They don't talk about that specifically, but they say any suggestiveness in the photo lineup was too subtle to be meaningful. So I assume that they found something. They don't particularly articulate what. My argument is, is that a review of the videotape clearly shows this. And during the cross-examination of the detective, during the motion to suppress in the State court proceedings, they played this portion of the videotape, and the officer admits that he tapped in the front middle portion. He didn't deny tapping, but somewhere near the picture, but told the, I think, the counsel that was cross-examining, refer to the video to see exactly what happened. Right. He, I think the question was, do you deny tapping? And he says, no, I don't deny tapping. It'll, the videotape will speak for itself. And that's exactly right. I think the videotape does speak for itself. And it's perplexing to me that it's not clear to the district court what is clear to me, that I can see the tapping there. But even if we were to put that aside, the State court ignored other evidence of suggestibility in its determination that the photo lineup was not suggestible. In particular, it ignored evidence that when the witness, Mr. Curtis, picked number one, the detective said, all right, in an exasperated kind of tone, like, well, okay, that's your pick, fine, there's nothing I can do about it. And when you review the videotape, you will see that the detective also appears to shake his head. Oh, I'm sorry. And then Mr. Curtis says, I didn't identify him, meaning the shooter, because the detective has already told Mr. Curtis that he believes the shooter is in this photo montage. So the person that did the identification actually picked photo number one, which was not your client, correct? Right. So that's good for you. So far. So far it's good. Okay. But after that, the detective makes Mr. Curtis know that he has not selected the suspect, has tapped on the photograph of my client, and then holds him there while Mr. Trevino, who has called into the police station to report his car stolen, they hold the witness there while they send a patrol car out to my client's house, pick him up, bring him back to the police station, set him all by himself in the front of the police station, turn the lights down, and then allow Mr. Curtis to view this show up after they have already told him that he has failed to select the correct person. And during that time, the police officer, actually a different officer, a lieutenant, actually goes up to my client and makes him remove his hat so Mr. Curtis can get a better look at himself. Let me ask you this, though. Okay. I think we know factually all of that occurred. But let's say at the end of the day, as you indicated, if he has to evidence that it was, in fact, your client, that there's other people that were there that know your client, that testify that he was the one, and didn't he even make a statement? He did not make a statement. The other witnesses who put Mr. Trevino at the scene are Mr. Cantu, who was the person who actually got into the fight with the person who died, the victim, and a second person, Mr. Vazquez. Now, both of these people were substantially impeached at trial because they Mr. Cantu was allowed to plead to a misdemeanor. From being an accomplice to a first-degree murder, he's allowed to plead to a misdemeanor in nominal jail time. The other person who placed Mr. Trevino there but does not say he was the shooter gets all of his charges dismissed, even though he was also an accomplice arguably to the murder, but most certainly to the destruction of the car afterwards. So he was at least an accessory after that. Okay. But what was his defense? His defense was he was with his ---- So it's not that he was wrongfully ---- well, he was ---- some other dude did it, essentially. So the jury was just deciding whether they believed these two people, not whether he was wrongfully ---- it's not really ---- the wrongful identification really isn't the issue in the sense ---- Oh, it absolutely is, because the issue is these guys are lying to cover up for one of their ---- That they did it. That they did it. Right. And I am at home with my girlfriend, and she testifies that he was at home with her. And so if it were only a credibility contest between my client and Mr. Cantu, that's exactly the kind of trial I would want to do. But it's not that trial, because we have this tainted identification from the person who is given both a suggestive lineup and a suggestive show-up. And that's the problem with the Idaho Supreme Court analysis, because what they hold is that, that they find that there was not an unreasonable ---- excuse me. We do not find any suggestiveness in the conduct of the photo lineup. We find any suggestiveness in the conduct of the photo lineup was too subtle to be meaningful. So all they analyzed is the suggestiveness of the photo lineup. But that's only half of the equation. The prejudicial ---- I'll continue, if I might. I'd like to finish this one thought. Because there's the additional suggestiveness of the photo lineup, I mean, of the show-up, it's an unreasonable application of the Foster case, where the United States Supreme Court says repetition of a same person in more than one identification procedure violates due process. Now, because the Idaho Supreme Court never identifies this totality of the identification procedure as a problem, it fails to correctly apply the Neal v. Biggers factors, where you have to weigh the effect of the prejudicial identification with the indicia of reliability. With that, I really appreciate your attention. Thank you so much. Thank you. Good morning, and please support. My name is Jessica Lorello, and I represent the Respondent, Warden Hardison. If I could just start with the videotape. Mr. Trevino, of course, argues that there was clear tapping. However, every court that has looked at this video to date, and I, who have also looked at this video, there is absolutely no clear tapping in that video. There is gesturing, certainly above the lineup, but there is no tapping. And the State court's finding of fact that there was no tapping is, of course, entitled to deference in this case. Is there any finding? There's a comment, I think, by the, in the Federal opinion, that he probably knew at the end that he had not identified the person that the police thought was a suspect. Correct. And that's, was that clear? Is that made clear by the videotape? Is there a finding in the State court to that effect? No. I don't, the, actually in the State district court, the court found that, as I recall, to the extent that, with respect to Trevino's argument that the officer was kind of trying to communicate that he had picked the wrong person, that if that were true, he, it certainly never changed his mind. With regard to who he was going to pick out of the phone lines. No, but it's that, it's when you put that together with a show-off. In other words, all right, there is a suspect in the, in the photo layout. It's not number one. That's the one I picked, but I'm pretty sure that I didn't satisfy the policeman. So, now they're going to show me somebody else. And it must be one of the ones who I didn't pick that was in the photo layout. Actually, Mr. Curtis's, the eyewitness's testimony at the suppression hearing, at least, was not that the officer ever communicated to him that he did not pick the wrong one. And his testimony was that he wasn't sure. Okay, wait, that was a little confusing of a sentence. I'm sorry. The officer did not communicate something, you had a couple double, a double negative there. Say that again. The eyewitness testified at the suppression hearing that he was, that the officer didn't do anything to lead him to believe that he picked the wrong person out of that lineup. His whole identification with that lineup, if you look at the tape, is equivocal. He's not sure at all when he's picking the lineup. And there's certainly nothing in the tape to evidence at any time that the officer told him or gave any indication to him that he picked the wrong person at all. With respect to the argument that the officer admits to tapping, I would take issue with that because the officer, I suppose it depends on what the meaning of tapping is. Because there is gesturing and there is some of this while talking. Well, if that's tapping, then that indeed did happen. But there's a big difference between that and pointing to try and suggest, you need to pick this person, this is the guy we think did it. And with respect to the argument that the state court ignored other evidence of suggestibility, of course, counsel characterizes the detective's reaction as an exasperated reaction. I looked at the videotape. I certainly don't note any exasperation in his voice. The district court didn't note any exasperation in his voice. With respect to the argument that the detective shook his head, the state district court made a specific finding that he did not shake his head. At best, it appeared that he may have adjusted his baseball cap. And if anything, once Mr. Curtis made the identification in that lineup, the detective immediately went with that. Asked him to sign a statement and indicate that he had picked the first picture in that lineup. And then even after Mr. Curtis said, can I take a look at it again? For whatever reason, there's certainly no evidence in the tape that he asked to take a look at it again because the detective didn't do anything to make him think he hadn't picked the right person. After he was staring at it a while, the detective again just kind of cut it off and said, why don't you go ahead and make your statement that you picked number one? And that's what he did. Now, when the individual shows up at the, when the defendant shows up at the station to report his car stolen, doesn't the witness say, isn't there some evidence there that he knew that this was the possible shooter? There's, there's, the State District Court made a finding that he was certainly never told, because there was a representation that he was told that the shooter's coming down or the person we think the shooter is coming down. The State District Court said, no, that didn't happen. That the only indication was that the registered owner of the vehicle was coming down to report his car stolen. With respect to Mr. Curtis's reactions to that, I don't know if it's just based on his fear that it might be the same guy. But there was certainly never any impression left by the police. I wonder why they told him, I mean, I could say, look, there's somebody we want you to look at. But when they say, well, we've got the registered owner of that car that you were in that dispute with, now take a look at him. Why did they identify him? It seems to me that's very suggestive, isn't it? Well, I think inherent in any show up is some element of suggestibility, because obviously- But if you tell them that they're tied to the car- Correct. That was at the scene, and he knows that that was the car that was at the scene of the crime, because they had, you know, it was matched to a license plate or whatever that was seen. So, it, it narrows the, it kind of narrows the- Sure, it does. And I don't dispute that at all. But I think with any show up, a one-man show up in any case, there's some inference there that we're showing you somebody who we think might have done it. So, I don't think it- Well, if we have to get to the analysis of prejudice, why don't you address that? With respect to that, of course, there's a lot of emphasis on the motive for Mr. Cantu and Mr. Velasquez to lie. But also, there's motive for Mr. Trevino to lie. There's motive for his girlfriend to lie. So, weighing all that, I don't necessarily think that the fact that they had a motive to lie necessarily makes the State's case weak. And the State's case, of course, did not depend on just the testimony of Mr. Velasquez or Mr. Cantu. They had the Suzuki, which was registered to Mr. Trevino, and the testimony was that it was destroyed. And, of course, the cops found that it was destroyed in the manner described by the co-defendants. The statement, Trevino made a statement saying that Cantu came and told him we need to wreck the car, destroy the car. Right. That statement, that's the only thing that was introduced at the trial, that Trevino did not testify, I gather. He did testify. He did? Oh, okay. Yes. So, he testified. And that was his testimony, then. Yes, that Mr. Cantu called and said, something's happened, you've got to wreck your car. But I don't think there was really any details, and he, of course, said, oh, sure, I'll do that, you're my friend, I just want to look out for you. Well, I think what your appellant's counsel argued, essentially, in that Mr. Trevino said he was elsewhere, all right? And so then you have two people that were allegedly there that got deals, and so there's impeachment that they would have a motive to try to point the finger to someone else. And then what he's saying is, plus the fact that you have, and what sort of puts the nail in the coffin is that the witness says, I'm 100% sure that that's the guy that was there and that that was the guy that was the shooter. So, the identification isn't totally irrelevant. No. I don't, no, and I don't think. Because he's saying he was somewhere else, and this person says, no, you were there, I'm sure that it was you, and then you have the other two people that say, yeah, you were there, and plus you're the murderer. Right, and absolutely, I'm not arguing that the identification is completely irrelevant. I think it is relevant, but I think it is also corroborated by the testimony of the co-defendants that, and I don't think their testimony just vanishes merely because they had a reason to lie. Obviously, Mr. Trevino had a reason to lie, and his girlfriend had a reason to cover him. And as the federal district court noted in its harmless error analysis, Trevino's own testimony undercut hers, which is, she would have noticed if he had ever gotten up, and he, in fact, testified that he did get up and went to the door because. What was the evidence of the gun? Pardon? What was the evidence of the gun? They found the gun, right? They found the gun. It was discarded a couple blocks away from the Circle K, exactly where. And how is the gun tied to Trevino? The gun is tied to Trevino because it was at his house. He had won it from Mr. Cantu in a bet, and also he had injury on his hand that would have been consistent with firing a gun like that. It was pretty distinct in that it was sawed off. And then, of course, the what he was wearing and the description provided by Mr. Curtis regarding his general appearance and what he was wearing all contribute to a finding, if there is a finding of error, that the error was harmless. You said the gun was at his house. Who testified to that? Mr. Cantu testified to that. So it was my gun, but I gave it to him to ---- Yes. It was his gun. And I actually don't think that's disputed, that the gun was at Mr. Trevino's house. Okay. There might be some dispute over ownership, but not that it was at his house. Thank you for your argument. All right. Mr. Benjamin, you basically used your time, but I'll give you a minute for rebuttal if you only take a minute. It's clear from the record that Mr. Curtis knows that he has not selected the correct person, the suspect, for several reasons. First, he exasperated all right. Secondly, he's allowed to look at the photo montage for a second time. Third, the police officer, after he picks number one twice, says, well, I'm going to have you do a compu sketch in addition. If he had picked the suspect, there would be no reason for him to do a compu spec again. And then fourth, they make him wait in order to do the show up. Now, at the show up, we know that Mr. Curtis believes that this is the suspect because they say he's the registered owner of the Suzuki, which was identified. Furthermore, we know that Mr. Curtis is in fear because he asked for the lights to be turned down so he cannot be seen by Mr. Trevino. One second left. Thank you so much. Thank you both for your argument. This matter will stand submitted. All right. James Fernand Sprague versus the state of Oregon, case number 0735353. That matter has been submitted on the briefs and will be submitted as of this date. The next matter on calendar is United States of America versus Jose Periz Vargas Gallegos.
judges: Canby, Hall, Callahan